(No. 89-CC-2491– )

MARK ALSOBROOK, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1995.*
*Order for motion for reconsideration filed November 1, 1995.*

BARCLAY, DAMISCH & SINSON (MARK DAMISCH, of counsel), for Claimant.

JIM RYAN, Attorney General (DANIEL FITZGERALD, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

The Claimant, Mark Alsobrook, filed this claim as a result of a motorcycle accident which occurred on July 14, 1988. Mr. Alsobrook had been riding motorcycles for 15 years. He had purchased a 1980 Suzuki approximately four months before the accident. The accident occurred at 8:00 p.m. on Interstate 290, approximately one-half mile north of Biesterfield Road. He and a friend of his, Steve Widdle, were both headed south on Interstate 290.

At that location, there were three lanes of south-bound traffic. Widdle was riding ahead of Alsobrook and was on the in-ramp to get onto the interstate. There was a slow-moving car on the ramp ahead of Widdle. Widdle and Alsobrook changed lanes to pass this car and then moved from the far right-hand lane to the middle lane. This took one to two seconds. Alsobrook described the roadway at this point as "rough." As Alsobrook was in the middle lane behind Widdle, he struck a rut and lost control of his motorcycle. Widdle's motorcycle at the time was 30 to 80 feet in front of Alsobrook, but on the right side of the lane. Alsobrook states that he was doing 55 mph at the time of the accident.

Alsobrook stated that he struck the ruts one second after seeing them. His motorcycle traveled 50 to 80 feet during that time. He could not turn left because of traffic. He stated that the first rut grabbed the front tire and yanked it to the left. The second rut yanked the motorcycle out of his hand. Alsobrook submitted photographs of the area which show extremely long and narrow broken concrete with some degree of ruts. These photographs were taken three weeks after the accident while Alsobrook was present.

A State trooper, Officer Wagner, was called as a witness by Alsobrook. He testified that the pavement was separated by a dropoff of one to two inches. He further testified that a scruff mark originated in the lane closest to the median and traveled approximately 100 feet to where the motorcycle came to rest. The trooper stated that a scruff mark is a tire mark made by a tire rolling sideways as opposed to skid mark caused by braking action.

Widdle testified for Alsobrook. He testified that he was riding his motorcycle in front of Alsobrook at a speed of 55 mph. He testified that Alsobrook hit the rut in the center lane, and that Alsobrook's pictures were an accurate description of the rut that he hit. Widdle further testified that Alsobrook was 50 to 100 feet behind him, and he went over the handlebars after the motorcycle went sideways. He stated that Alsobrook ended up on the shoulder of the road.

It appears that the Claimant has proved by a preponderance of the evidence that the ruts identified in the photographs were indeed the cause of the accident in question. They were both the actual cause and the proximate cause. The State obviously has no duty to be an insurer of its highways, but does have a duty to keep the highways reasonably safe for the purposes for which they were intended. These purposes include the riding of motorcycles.

The Claimant, however, must prove either actual or constructive notice of the defect by the State of Illinois in order to be able to recover. (*Berger v. State* (1988), 40 Ill. Ct. Cl. 120.) Actual notice has not been proven.

Constructive notice, therefore, is the ultimate issue in this case, as it is in many highway defect cases. It always creates a difficult burden for a Claimant to meet. Unlike weather-related cases, it is difficult to prove by circumstantial evidence that the State indeed had notice of the defect.

The two general methods for proving constructive notice of a defect are the length of time that the defect has existed and/or the defect being so obvious that constructive notice could be imputed by the nature of the defect itself.

In this case, based on the facts presented, this is a very close question. It was impossible for the Claimant to prove the length of time that the defect existed due to the lack of records available to him with which to do so, and the fact that it was not a weather-related defect.

We therefore turn to the nature of the defect in question. Widdle's testimony confirms Alsobrook's testimony that the photographs accurately depict the ruts which caused the accident. The State has produced no evidence to directly contradict this. A close review of the ruts in question indicate from the nature and extent of the rut, that we can impute constructive notice of the rut in question to the State. While it is possible, and probably likely that large trucks do cause traumatic potholes by striking patches in the pavement, it is extremely unlikely that the long, narrow defects in the concrete in this case were caused by one or two vehicles over a short period of time. Therefore, we find that the State had constructive notice of this particular defect. If this defect were significantly different, or even moderately different, then we might, and probably would, reach a different result.

As a result of this injury, Alsobrook was seriously injured. His total medical bills were $15,200, and he had lost wages of $4,680. In addition, the evidence was uncontradicted that Alsobrook suffered significant pain and suffering, scarring, short term memory loss, and restrictions as to his physical abilities which he did not have prior to the accident.

There was no direct evidence presented to the Court of contributory or comparative fault; however, the Court has carefully reviewed the testimony of Alsobrook as to his actions immediately prior to leaving the motorcycle. We believe there is some degree of comparative fault.

We find liability on the part of the Respondent and establish damages in the amount of one hundred twenty-five thousand dollars ($125,000). We find Alsobrook to be forty percent (40%) at fault, and we reduce the damages by fifty thousand dollars ($50,000) and award the Claimant the amount of seventy-five thousand dollars ($75,000).

## ORDER

PATCHETT, J.

This cause comes before the Court upon the motion for reconsideration filed by the Respondent.

The Court has carefully considered the motion for reconsideration. However, there is nothing alleged in the motion which convinces the Court that its initial determination of the facts or application of the law was in error.

Therefore, the motion for reconsideration is denied.