(No. 89-CC-2715–■)

KAREN OLENICK, as Independent Executor of the Estate of GLORIA OLENICK, Deceased, Claimant, v.
THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 1, 1999.*

MUNDAY & NATHAN (THOMAS NATHAN and LISA PACH, of counsel), for Claimant.

JIM E. RYAN, Attorney General (EDWARD C. SEWARD III, Assistant Attorney General, of counsel), for Respondent.

OPINION

RAUCCI, C.J.

On February 29, 1988, Gloria Olenick was killed when the motor vehicle she was operating collided with a northbound commuter train just east of the intersection of Lehigh and Howard in the Village of Niles, Cook County, Illinois. The evidence established that she turned left from southbound Lehigh to go eastbound on Howard. Unfortunately, she executed the turn improperly and for a brief distance drove eastbound in the westbound lanes before her vehicle was struck. What caused her to execute the turn improperly, thereby circumventing the grade crossing gates, forms the basis of this claim.

Gloria Olenick, a 57-year-old widow and mother of three, was the owner and operator of an advertising agency located a short distance from the scene of the collision. She had assumed responsibility for the operation of the agency after her husband's death in 1985. Based on the lost

income projections presented by Claimant, Mrs. Olenick's business was successful. She was familiar with the intersection of Lehigh and Howard since she had driven through it a countless number of times. The intersection itself is complicated by the existence of railroad tracks which are east of and run parallel to Lehigh. On the date in question, the traffic signals for north and southbound Lehigh remained green with the approach of a train from either the north or the south. Naturally, the east and westbound traffic lanes on Howard Street would be confronted with red lights during the approach of a train. In addition, the gates and lights which were designed in accordance with the Federal Highway Administration Code, the Manual of Uniform Traffic Control Devices and the Institute of Traffic Engineers Manual for Traffic Signal design, would become activated. There were, however, two additional signs which were activated for traffic coming southbound on Lehigh (such as Gloria Olenick) when the crossing gates were down and the flashing lights were operating. Located on both the east and west side of Lehigh on the south side of Howard, these signs were designed to advise motorists, such as Mrs. Olenick, that no left turns were allowed when the gates were down and the lights were flashing. These signs were working on the date of the collision.

The weather on February 29, 1988, was clear and dry. The accident occurred shortly after 9:00 a.m. Therefore, in the seconds immediately before the collision as a commuter train approached Howard, Mrs. Olenick was on Lehigh operating her vehicle southbound and the light was green as she approached the intersection. Mrs. Olenick drove her vehicle directly in the path of a train seemingly unaware of the lights, gates and signs. Claimant has produced evidence to explain these actions.

At that time of the day at that time of the year, the sun would come up from the southeastern horizon. It is

likely that Mrs. Olenick experienced sun blindness at the time she made her turn to go eastbound, causing her to enter the westbound lanes and missing the gates which had come down over the eastbound lanes. The explanation is more plausible than the Respondent's contention that she was trying to get across the track ahead of the train.

Claimant has presented the testimony of a former Niles police officer who conducted an investigation of the intersection after this collision. By sitting at the intersection at the same time of the day as when Mrs. Olenick died, the officer could observe the problems the sun caused on a person looking in the direction of the gates and lights. Claimant established that an almost identical accident occurred at the very same location approximately two years earlier. The Niles police officer noted that the sun's effect on sight lines at the intersection was considerable at certain times of the day.

Claimant's expert witness opined that the intersection was hazardous because it did not have an all red sequence during the time trains were approaching and crossing Howard. He further opined that the "No Left Turn" signs were inadequate. The evidence established that the "No Left Turn" signs became active when the train that struck Mrs. Olenick's car was 1,300 feet south of the crossing. For approximately 30 seconds, the train approached Howard and the "No Left Turn" signs were on. It is likely that Mrs. Olenick was approaching Howard from the opposite direction, noticed the green lights for southbound traffic, started to make her left turn and became blinded by the sun, preventing her from seeing the lights and gates.

Claimant's theory of liability rests on the fact that it was solely the State's responsibility to decide upon the sequencing of the lights at the intersection, including the times when trains were present. Claimant admits that this

crossing itself is not under the State's control and is not contending that there was any defect in the gates and lights. The evidence establishes that the intersection did become dangerous during a window on certain days when the sun was at a particular place at a particular time, and this fact contributed to Mrs. Olenick's plight. However, the Respondent had placed two signs on the south side of Howard. The information provided by the various signs was somewhat contradictory and one of the "No Left Turn" signs was probably not visible to her. For Mrs. Olenick, the sun would have been a factor as she looked toward the southeast which was to her left. However, the sign on the southwest corner would not have been effected by the sun phenomena. Do these problems constitute sufficient basis to hold the Respondent liable for the death of Mrs. Olenick? We think not for the following reasons.

Mrs. Olenick's death was caused by a convergence of factors which were apparent to no one until after her death. Even after the prior accident, the problems previously discussed had never been recognized by the State or any other authorities. Certainly one accident in an otherwise functional intersection does not create notice of a dangerous condition. The prior accident could have been attributable to a number of other factors which cause train collisions all over the State. There was no obvious answer to what caused that collision and, therefore, the State gained no insight into the problem with the sun. In order to hold the State responsible, the Claimant must prove either actual or constructive notice of a dangerous condition. (*Alsobrook v. State* (1995), 48 Ill. Ct. Cl. 205.) Neither has been proved in this case.

The State is not an insurer of the safety of users of its highways. (*Cotner v. State* (1987), 40 Ill. Ct. Cl. 71.) In order for Claimant to prevail, she must prove that the

State had actual or constructive notice of the dangerous condition. (*Norman v. State* (1982), 35 Ill. Ct. Cl. 693.) "The mere fact that defective condition existed if, in fact, it did exist, is not in and by itself sufficient to constitute an act of negligence on the part of the Respondent." (*Palmer v. Northern Illinois University* (1964), 25 Ill. Ct. Cl. 1.) Claimant, in order to prevail, must also show that the alleged defect was the proximate cause of her decedent's death. *Stanley v. State* (1986), 39 Ill. Ct. Cl. 107.

While we are sympathetic to Claimant, we cannot on this record find liability on the part of Respondent.

It is therefore ordered, adjudged and decreed that this claim be, and it is hereby, dismissed with prejudice.